Case 3:22-cv-00519-DWD   Document 1-1   Filed 03/14/22   Page 1 of 17   Page ID #11

EXHIBIT A

***EFILED***
Case Number 2022LA000051
Date: 1/13/2022 11:22 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased,<br><br>    Plaintiff,<br><br>-vs.-<br><br>AIR & LIQUID SYSTEMS CORPORATION,<br>    Successor-by-Merger to BUFFALO<br>    PUMPS, INC.,<br>A.O. SMITH CORPORATION,<br>ARMSTRONG INTERNATIONAL, INC.,<br>ARMSTRONG PUMPS, INC.,<br>AURORA PUMP COMPANY,<br>BRYAN STEAM LLC,<br>BURNHAM LLC,<br>CAMERON INTERNATIONAL<br>    CORPORATION f/k/a COOPER<br>    CAMERON CORPORATION,<br>CARRIER CORPORATION including its<br>    BRYANT HEATING AND COOLING<br>    and its division INTERNATIONAL<br>    COMFORT PRODUCTS,<br>CARVER PUMP COMPANY,<br>CASHCO, INC., Individually and as Successor-<br>    in-Interest to A.W. CASH CO,<br>CLEAVER-BROOKS, a division of AQUA-<br>    CHEM INC.,<br>COMPUDYNE CORPORATION, Individually<br>    and as Successor-in-Interest to York-<br>    Shipley, Inc.,<br>COPES-VULCAN, INC.,<br>CRANE CO.,<br>CROWN, CORK & SEAL USA, INC.,<br>ECR INTERNATIONAL INC., Individually<br>    and as Successor-in-Interest to THE<br>    UTICA COMPANIES INC, UTICA<br>    BOILERS INC and DUNKIRK<br>    RADIATOR CORP,<br>FLOWSERVE US, INC., Solely as Successor<br>    to ROCKWELL MANUFACTURING<br>    COMPANY and EDWARD VALVES,<br>    INC., | No. 22-LA<br><br>WRONGFUL DEATH |

| | |
|---|---|
| FMC CORPORATION, as Successor-in-Interest to NORTHERN PUMPS and on behalf of its former Peerless Pump and Chicago Pump businesses, | ) ) ) ) |
| GARDNER DENVER, INC., | ) |
| GENERAL ELECTRIC COMPANY, | ) |
| GREENE TWEED & CO, INC., | ) |
| GOODYEAR TIRE & RUBBER CO., | ) |
| GOULDS PUMPS LLC, | ) |
| THE GORMAN RUPP COMPANY, | ) |
| GRINNELL LLC, | ) |
| HERCULES, LLC, | ) |
| HONEYWELL INTERNATIONAL INC., AS SUCCESSOR-IN-INTEREST TO BENDIX CORP., | ) ) ) |
| HOWDEN NORTH AMERICA, INC., individually and as Successor-in-Interest to BUFFALO FORGE COMPANY, | ) ) ) ) |
| IMO INDUSTRIES INC., Individually and as Successor-in-Interest to DELAVAL STEAM TURBINE COMPANY, | ) ) ) |
| INVENSYS SYSTEMS, INC., Individually and as Successor-in-Interest to Fulton Sylphon, | ) ) ) |
| ITT CORPORATION, | ) |
| JAMES WALKER MFG. CO., | ) |
| JOHN CRANE, INC., | ) |
| JOHNSON CONTROLS, INC., | ) |
| KOHLER, CO., | ) |
| LENNOX INDUSTRIES, INC., | ) |
| METROPOLITAN LIFE INSURANCE CO., | ) ) |
| MILWAUKEE VALVE COMPANY, INC., | ) |
| THE NASH ENGINEERING COMPANY, | ) |
| PECORA CORPORATION, | ) |
| PNEUMO ABEX, LLC, as Successor-in-Interest to ABEX CORPORATION, | ) ) ) |
| RHEEM MANUFACTURING COMPANY, | ) |
| SID HARVEY INDUSTRIES INC., | ) |
| SPIRAX SARCO, INC., | ) |
| UNION CARBIDE CORPORATION, | ) |
| VIACOMCBS INC., f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor-by-merger to CBS Corporation, a Pennsylvania | ) ) ) ) |

|  |  |
|---|---|
| corporation, f/k/a Westinghouse Electric Corporation, | ) ) |
| WARREN PUMPS, LLC., f/k/a WARREN PUMPS, INC., | ) ) |
| WEIL-MCLAIN COMPANY, INC., | ) |
| WELCO MANUFACTURING COMPANY, | ) |
| THE WILLIAM POWELL COMPANY, | ) |
| AND, | ) |
| YORK INTERNATIONAL CORPORATION, | ) |
|  | ) |
| Defendants. | ) |

(Remainder of Page Intentionally Left Blank)

## COMPLAINT

### COUNT I
### (NEGLIGENCE COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)

Now comes the Plaintiff, MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased, by her attorneys, SWMW Law, LLC, and for her cause of action against the Defendants, states:

1. The Plaintiff is the widow and Special Administrator of the deceased, DAVID VANOVER.

2. The Plaintiff is the duly appointed Special Administrator of the Estate of DAVID VANOVER, deceased, pursuant to an Order IN THE CIRCUIT COURT THIRD JUDICIAL CIRCUIT MADISON COUNTY, ILLINOIS.

3. Plaintiff brings this action pursuant to 740 ILCS 180/1-2.2, 755 ILCS 5/27-6 and 750 ILCS 65/15.

4. David G. Vanover was first exposed to asbestos from 1962 to 1964 while working as an iron worker and laborer at Lakey Foundry in Muskegon, Michigan. He was next exposed from 1964 to 1966 while serving in the US Navy as a Boilermaker and Ship Serviceman aboard the USS Boxer performing hands on maintenance and repair of pumps, valves, boilers and other asbestos containing equipment in the engineering spaces. Then Mr. Vanover was again exposed to asbestos while working at Lakey Foundry from 1966-1972. He was further exposed while intermittently working as an iron worker and welder at CWC Foundry from 1969 to 1983. Mr. Vanover was next exposed while working as a construction worker and plumber in Michigan from 1983 to 2005. Finally, Mr. Vanover was exposed to asbestos while performing his own and helping others perform their own home remodeling and automotive repair work throughout the 1970's and 1980's.

5. Mr. Vanover's various exposures to asbestos occurred while working with asbestos-containing products that were (1) manufactured, designed, labeled, distributed, supplied, or sold from Illinois companies; and/or (2) were assembled or manufactured with raw asbestos fibers and/or asbestos-

containing components distributed, supplied or sold from companies headquartered or from locations in Illinois; and/or (3) were insured by companies located in Illinois; and/or (4) were tested, in whole or in part, by companies in Illinois; and/or (5) were members, received documents, and/or attended meetings of organizations that met or were based in Illinois that supplied information to Defendant(s) discussing the potential health hazards of asbestos exposures.

6. Decedent's exposure to the materials, products, equipment, activities and conditions attributable to the various Defendants occurred at different times as to each and not necessarily throughout Decedent's entire career or life as to any particular Defendant. Decedent does not intend to extend exposure to a Defendant beyond the years established by the evidence in the case as to that particular Defendant. Decedent's exposure to asbestos does not extend beyond December 4, 1980, unless established by the evidence in the case as to a particular Defendant.

7. During the course of Decedent's employments at the locations mentioned above, the Decedent was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold, distributed or installed by the Defendants: AIR & LIQUID SYSTEMS CORPORATION, Successor-by-Merger to BUFFALO PUMPS, INC., A.O. SMITH CORPORATION, ARMSTRONG INTERNATIONAL, INC., ARMSTRONG PUMPS, INC., AURORA PUMP COMPANY, BRYAN STEAM LLC, BURNHAM LLC, CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION, CARRIER CORPORATION including its BRYANT HEATING AND COOLING and its division INTERNATIONAL COMFORT PRODUCTS, CARVER PUMP COMPANY, CASHCO, INC., Individually and as Successor-in-Interest to A.W. CASH CO, CLEAVER-BROOKS, a division of AQUA-CHEM INC., COMPUDYNE CORPORATION, Individually and as Successor-in-Interest to York-Shipley, Inc., COPES-VULCAN, INC., CRANE CO., CROWN, CORK & SEAL USA, INC., ECR INTERNATIONAL INC., Individually and as Successor-in-Interest to THE

UTICA COMPANIES INC, UTICA BOILERS INC and DUNKIRK RADIATOR CORP, FLOWSERVE US, INC., Solely as Successor to ROCKWELL MANUFACTURING COMPANY and EDWARD VALVES, INC., FMC CORPORATION, as Successor-in-Interest to NORTHERN PUMPS and on behalf of its former Peerless Pump and Chicago Pump businesses, GARDNER DENVER, INC., GENERAL ELECTRIC COMPANY, GREENE TWEED & CO, INC., GOODYEAR TIRE & RUBBER CO., GOULDS PUMPS LLC, THE GORMAN RUPP COMPANY, GRINNELL LLC, HERCULES, LLC, HONEYWELL INTERNATIONAL INC., AS SUCCESSOR-IN-INTEREST TO BENDIX CORP., HOWDEN NORTH AMERICA, INC., individually and as Successor-in-Interest to BUFFALO FORGE COMPANY,IMO INDUSTRIES INC., Individually and as Successor-in-Interest to DELAVAL STEAM TURBINE COMPANY, INVENSYS SYSTEMS, INC., Individually and as Successor-in-Interest to Fulton Sylphon, ITT CORPORATION, JAMES WALKER MFG. CO., JOHN CRANE, INC., JOHNSON CONTROLS, INC.,KOHLER, CO., LENNOX INDUSTRIES, INC., METROPOLITAN LIFE INSURANCE CO., MILWAUKEE VALVE COMPANY, INC., THE NASH ENGINEERING COMPANY,PECORA CORPORATION, PNEUMO ABEX, LLC, as Successor-in- Interest to ABEX CORPORATION, RHEEM MANUFACTURING COMPANY, SID HARVEY INDUSTRIES INC., SPIRAX SARCO, INC., UNION CARBIDE CORPORATION, VIACOMCBS INC., f/k/a CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor-by-merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, WARREN PUMPS, LLC., f/k/a WARREN PUMPS, INC., WEIL-MCLAIN COMPANY, INC., WELCO MANUFACTURING COMPANY, THE WILLIAM POWELL COMPANY, AND, YORK INTERNATIONAL CORPORATION.

  8.  Jurisdiction is appropriate for all defendants in this matter due to the fact that each and every one of them either maintains a registered agent and/or is present within this State and purposefully avails

itself of the rights and benefits of the laws of the State as a result of ownership of property, business operations, and/or sales to citizens of the State.

9. At all times herein set forth, the Defendants' products were being employed in the manner and for the purposes for which they were intended.

10. The Decedent's exposure to and inhalation, ingestion or absorption of the asbestos fibers emanating from the above-mentioned products was completely foreseeable and could or should have been anticipated by the Defendants.

11. The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

12. That on or about September 27, 2018, Decedent first became aware that he had developed lung cancer, an asbestos-induced disease, and that at a subsequent time learned said disease was wrongfully caused. Mr. Vanover passed away on August 1, 2020, as a result of his lung cancer.

13. At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of the Decedent and others working with and around the products of the Defendants containing asbestos.

14. The Defendants failed to exercise ordinary care and caution for the safety of the Decedent in one or more of the following respects:

    (a) Included asbestos in their products and/or installed asbestos-containing products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Decedent, working with, came into contact with or around them would inhale, ingest or otherwise absorb great amounts of that asbestos;

    (b) Included asbestos in their products and/or installed asbestos-containing products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

    (c)    Included asbestos in their products and/or installed asbestos-containing products when adequate substitutes for the asbestos in them was available;

    (d)    Failed to provide any or adequate warnings to persons that came into contact with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

    (e)    Failed to provide any or adequate instructions to Decedent concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

    (f)    Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers, such as the Decedent might be exposed while working with, coming into contact with said products.

    (g)    Failed to employ safe methods of working with or around asbestos, thereby releasing asbestos fibers that Decedent, inhaled, ingested or otherwise absorbed.

15. The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship due to the presence of an Illinois Defendant. Removal is improper. Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised. Plaintiffs sue no foreign state or agency. Venue is proper in this county in Illinois.

16. That as a direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, the Decedent was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers causing Decedent to develop lung cancer which ultimately led to his death on August 1, 2020; the Decedent, prior to his death, was compelled to expend and become liable for large

sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Decedent, prior to his death, experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Decedent was hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him and his estate; further, by reason of the death of the Decedent, his family has been deprived of her means of support and has lost the society of the Decedent; lastly, substantial sums of money were expended by the Decedent's estate for funeral and burial.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

>
> Respectfully submitted,
> MARCIA VANOVER, Individually, and as
> Special Administrator of the Estate of
> DAVID VANOVER, Deceased,

## COUNT II
## (WILFUL AND WANTON COUNT AS TO MANUFACTURERS OF ASBESTOS PRODUCTS)

Now comes the Plaintiff, MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased, by her attorneys, SWMW Law, LLC, and for her cause of action against the Defendants, states:

1 - 12.   Plaintiff repeats and re-alleges Paragraphs 1-12 of Count I as and for Paragraphs 1 through 12 of this Count II.

13.   Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

(a) Intentionally or with a reckless disregard for the safety of Decedent included asbestos in their products and/or installed asbestos-containing products, even though it was completely foreseeable and could or should have been anticipated that persons such as the Decedent, working with or around them, would inhale, ingest or otherwise absorb great amounts of that asbestos;

(b) Intentionally or with a reckless disregard for the safety of Decedent included asbestos in their products and/or installed asbestos-containing products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

(c) Intentionally or with a reckless disregard for the safety of Decedent included asbestos in the products and/or installed asbestos-containing products when adequate substitutes for the asbestos in them was available;

(d) Intentionally or with a reckless disregard for the safety of the Decedent failed to provide any or adequate warnings to persons working with and around, coming into contact with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

(e) Intentionally or with a reckless disregard for the safety of the Decedent failed to provide any or adequate instructions concerning the safe methods of working with and around, coming into contact with, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them; and

(f) Intentionally or with a reckless disregard for the safety of the Decedent failed to conduct tests on the asbestos containing products manufactured, sold, distributed and/or installed delivered by the Defendants in order to determine the hazards to which workers and their family members such as the Decedent might be exposed while working with, coming into contact with the products.

14. Plaintiff repeats and re-alleges Paragraph 14 of Count I as and for Paragraph 13 of this Count II.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

> Respectfully submitted,
> MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased,

## COUNT III
### (CONSPIRACY AGAINST HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION)

Comes now the Plaintiff, MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased, by her attorneys, SWMW Law, LLC, and for her cause of action against the Defendants HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, state:

1. Plaintiff repeats and re-alleges Paragraph 1 of Count I as and for Paragraph 1 of this Count III.

2. During the course of his employment, Decedent was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around which were manufactured, sold or distributed by the Defendants named in Count I above.

3. The Defendants, including HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Decedent in the following manner.

4. Beginning in the late 1920's, the conspirators, Johns-Manville, Raybestos-Manhattan, Metropolitan Life Insurance Company, Honeywell International, Inc., as Successor in Interest to Bendix Corp. and others conducted research on asbestos-related health problems and as a result undertook a duty to inform the consuming public about any health risks that could be associated therewith.  In approximately 1929, the conspirator, Metropolitan Life Insurance Company, through its agents and employees acting within the scope of their employment, notably Dr. Anthony J. Lanza, began an investigation of asbestos-related health hazards in the United States, by studying asbestos mines in Canada and on the Eastern seaboard of the United States.  In 1935, this study was altered by Lanza, with the full knowledge of Metropolitan, at the request of and in concert with the asbestos industry, and the conspirators named herein in order wrongly to influence the United States Public Health Service, the United States medical community and various state legislatures, including the New Jersey Worker's Compensation Commission.  At all times mentioned herein, Metropolitan Life Insurance Company was the general medical, disability and life insurance carrier, both occupational and non-occupational, for the conspirators Johns-Manville in the U.S. and Canada, and Raybestos-Manhattan, as well as others in the industry.

5. Dr. Lanza's omission of any citation to the significant English literature from his 1935 published report was a continuation of the policy of Metropolitan Life and its co-conspirators, to misrepresent and suppress relevant information about the seriousness of asbestosis disease, especially to asbestos industry employees and consumers of asbestos products.

6. The following conspirators were members of the trade association known as the Quebec Asbestos Mining Association ("Q.A.M.A."):  Johns-Manville Corporation, Carey Canada, individually and as successor to Quebec Asbestos Corporation, National Gypsum Company and Turner & Newall, individually and successor to Bell Asbestos.  These conspirators, members of the Q.A.M.A., participated in the above-described material misrepresentations of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the <u>AMA Archives of Industrial Health in 1951</u>.  Evidence of the Q.A.M.A.'s

involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators dated 10/29/47, 11/26/47, 3/6/38, 10/15/48, 3/8/49, 3/21/51 and 9/6/50 and all indicating close monitoring of the editing process of Dr. Gardner's work by Q.A.M.A.'s representative Mr. Ivan Sabourin, acting on behalf of all Q.A.M.A. members, and also acting in close concert with the Metropolitan Life Insurance Company and Dr. Anthony J. Lanza.

7. In addition to the above described actions, the conspirators, through their agent, Dr. Anthony J. Lanza of the Metropolitan Life Insurance Company, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the lung cancer hazard which in fact did exist for workers and bystanders in the asbestos industry.

8. Because of the above-described efforts of Dr. Lanza of Metropolitan Life, and the other co-conspirators, many other active scientists in the field of environmental cancer were driven out of their laboratories soon after describing their findings on cancer hazards of asbestos/industrial health origin. This included Dr. Gerritt Schepers, who had conducted in-patient studies in South Africa. (Lanza and Vandiver Brown suppressed the publication of Schepers work while Schepers was affiliated at New York University.) These efforts wrongfully obstructed and confused the real asbestos hazard situation, and had a profound retarding effect on the evaluation of the truth in asbestos and asbestos-related health and cancer research.

9. In addition to all allegations above, the conspirators actively suppressed publications concerning asbestosis in the <u>Asbestos Magazine</u>, a trade magazine and important source of information to the public, and also to users of asbestos products, including users such as the Decedent herein. This magazine was read by sales and marketing personnel in the asbestos industry.

10. The acts of the defendant conspirators, as described above, constitute a fraudulent misrepresentation/concealment which proximately caused the injuries to the Decedent in the following manner:

    A. The material published or caused to be published by the conspirators was false and incomplete in that the Defendants knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-related products.

    B. The Defendants individually, as members of a conspiracy, and as agents of other co-conspirators, intended the publication of false and misleading reports, and/or the non-disclosure of documented reports of the health hazards of asbestos:

1. To maintain a favorable atmosphere for the continued sale and distribution and use of asbestos and asbestos-related products;

2. To assist in the continued pecuniary gain of the Defendants through the sale of asbestos products to an ignorant public;

3. To influence in the Defendant's favor legislation to regulate asbestos exposures and limit medical and disability claims for compensation;

4. To provide a defense in lawsuits brought for injury resulting from asbestos disease;

5. To prevent relevant medical inquiry about asbestos disease;

6. To mislead the general public, and the Decedent, herein, about the hazards associated with asbestos products; and

7. To induce the Decedent to use and continue to use asbestos products.

    C. The Decedent reasonably relied upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products, and the absence of published

medical and scientific reports on the hazards of asbestos and asbestos-related products to asbestos because they believed it to be safe.

        D.      Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators intended that the Decedent, relied upon the published reports regarding the safety of asbestos and asbestos-related products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue their exposure to those products.

        E.      Defendants individually, and as members of a conspiracy, and as agents of other co-conspirators were in a position of superior knowledge regarding the health hazards of asbestos and therefore the Decedent and others deciding to use said asbestos-containing products to which Decedent was exposed had a right to rely and did rely on the published reports commissioned by the Defendant regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

        F.      Decedent suffered injuries as a direct and proximate result of the acts alleged above.

11.      As a direct and proximate result of Metropolitan Life's intentional publication of deceptive and misleading medical data and information, as described in the preceding paragraphs, upon which data the Decedent, reasonably relied, the Defendant caused asbestos and/or asbestos-containing products to be used by Decedent, and Decedent has inhaled or otherwise ingested hazardous asbestos dust, and/or will inhale or ingest hazardous asbestos dust, resulting in injuries.

12.      Additionally and alternatively, as a direct and proximate result of Metropolitan Life, and Honeywell International, Inc., as Successor in Interest to Bendix Corp.'s actions and omissions as described above, the Decedent was caused to remain ignorant concerning the danger of human exposure to asbestos, resulting in damage to the Decedent by depriving the Decedent, his agents, employees and the general public, of opportunities to be aware of the hazards of asbestos exposure, and thus the opportunity to take proper safety precautions and/or avoid exposure to asbestos dust.  Because of this ignorance on the part of

the Decedent, HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION's concealment from the Decedent of the alteration of its published test results, and the actions and omissions and concerted design and conspiracy of HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION's and others, all as described above, the Decedent, was occupationally exposed to asbestos and/or asbestos-containing products used at their places of employment and has inhaled or otherwise ingested hazardous asbestos dust resulting in him developing lung cancer.

13. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of HONEYWELL INTERNATIONAL, INC., AS SUCCESSOR IN INTEREST TO BENDIX CORP., METROPOLITAN LIFE INSURANCE CO., AND, PNEUMO ABEX, LLC, as Successor in Interest to ABEX CORPORATION, the Decedent, was exposed to and inhaled, ingested or otherwise absorbed great amount of asbestos fibers causing Decedent to develop the asbestos disease aforesaid, which has disabled and disfigured the Decedent; the Decedent has in the past been compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Decedent has in the past experienced great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; that as a further result of his asbestos-induced disease and conditions, the Decedent has in the past been hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants jointly and severally for actual and compensatory damages in an amount to be determined by a jury at trial and, in excess of FIFTY

THOUSAND ($50,000.00) DOLLARS as well the cost of this action. Pre-judgment and post-judgment interest, and any other such relief that the court deems just and equitable.

> Respectfully submitted,
> MARCIA VANOVER, Individually, and as Special Administrator of the Estate of DAVID VANOVER, Deceased,

## COUNT IV
## (LOSS OF CONSORTIUM)

1. Plaintiff, MARCIA VANOVER, is the widow of DAVID VANOVER.

2. Plaintiff, MARCIA VANOVER, hereby incorporate the allegations contained in Counts I-III of this Complaint.

3. That as a direct and proximate result of one or more of the foregoing acts or omissions of the Defendants, the Plaintiff, MARCIA VANOVER, has been deprived of the companionship, society and services of her husband, DAVID VANOVER, all to her damage in an amount in excess of $50,000.00.

WHEREFORE, Plaintiff prays judgment be entered against the Defendants for a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS which will fairly and reasonably compensate for the Decedent's injuries.

> Respectfully submitted,
> MARCIA VANOVER, Plaintiff
>
> Respectfully submitted,
> SWMW Law, LLC
>
> By: _____
> Benjamin R. Schmickle, #6270568
> Matthew C. Morris, #6285481
> asbestos@swmwlaw.com
> Attorneys for Plaintiff
> 701 Market Street, Suite 1000
> St. Louis, MO 63101
> (314) 480-5180
> (314) 932-1566 Facsimile